**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

STEVEN ANTHONY SALADINO,

                              Plaintiff,

                                                         Case No. 8:13-cv-2654-T-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.
_____/

## <u>OPINION AND ORDER</u>[1]

### I.  Status

        Steven Anthony Saladino ("Plaintiff") is appealing the Commissioner of the Social

Security Administration's final decision denying his claim for supplemental security income

("SSI").  Plaintiff's alleged inability to work is due to the following: "dyslexia, ADHD, bipolar

disorder, anxiety, [a] head injury, migra[i]ne headaches," and anger issues.  Transcript of

Administrative Proceedings (Doc. No. 17; "Tr." or "administrative transcript"), filed May 19,

2014, at 187 (emphasis and some capitalization omitted); <u>see</u> Tr. at 149.  On September 21,

2009, Plaintiff filed an application for SSI, Tr. at 148-68, in which he alleged an onset

disability date of December 30, 2004, Tr. at 149.  Plaintiff subsequently amended his alleged

onset disability date to April 22, 2010.  Tr. at 48.  Plaintiff's application was denied initially,

<u>see</u> Tr. at 95-96, and was denied upon reconsideration, <u>see</u> Tr. at 99-100.

_____

        [1]        The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  <u>See</u>
Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 18), filed May 20, 2014;
Reference Order (Doc. No. 20), entered May 27, 2014.

On April 18, 2012, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who had a non-attorney representative with him; Plaintiff's mother; and a vocational expert ("VE") testified.  Tr. at 45-86.  At the time of the hearing, Plaintiff was thirty-seven years old.  Tr. at 50.  The ALJ issued a decision on May 4, 2012, Tr. at 13-25, finding Plaintiff not disabled "since September 21, 2009, the date the application was filed," Tr. at 25 (emphasis and citation omitted).  The Appeals Council received additional evidence from Plaintiff's representative that it incorporated into the administrative transcript.  Tr. at 6 (Order of Appeals Council); Tr. at 299-303 (Plaintiff's representative's correspondence and brief).  On August 21, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final Decision of the Commissioner.  On October 15, 2013, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1),[2] seeking judicial review of the Commissioner's final decision.

Plaintiff raises two arguments on appeal: 1) the ALJ failed to include in the RFC all of Plaintiff's mental limitations as assessed by two physicians, even though the ALJ assigned both physicians' opinions "great weight"; and 2) the ALJ failed to include all of Plaintiff's physical limitations in the RFC.  See Plaintiff's Brief–Social Security (Doc. No. 23; "Pl.'s Br."), filed August 4, 2014, at 2, 5-17.  On October 3, 2014, Defendant filed a responsive memorandum.  See Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem.").  After being granted permission to do so, Plaintiff also filed a Reply Brief–Social Security (Doc. No. 27) on October 20, 2014.  After a thorough review of the

---

[2]     Plaintiff amended his complaint on October 23, 2013.  See Amended Complaint (Doc. No. 7).

entire record and consideration of the parties' respective filings, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 15-25.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since September 21, 2009, the application date."  Tr. at 15 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: attention deficit hyperactivity disorder; major depressive disorder; generalized anxiety disorder; and degenerative disc disease of the lumbar and cervical spine."  Tr. at 15 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or

_____

[3]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted). The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 416.967(b) with the following limitations. [Plaintiff] requires a sit/stand option in which he can sit four hours at a time and stand/walk four hours at a time, in addition to regularly scheduled breaks. He can use his upper extremities for fine and gross manipulation of objects, but is limited to only occasional use of the right upper extremity for fine and gross manipulation of objects repetitively. [Plaintiff] is limited to occasional stooping, squatting, crawling, overhead reaching with both arms, and climbing ramps and stairs; but can frequently bend. He cannot climb ladders, ropes, or scaffolds. [Plaintiff] must avoid extreme changes in temperatures, as well as avoid concentrated exposure to vibration, dusts, gases and work hazards, such as dangerous machinery, uneven terrains, and unprotected heights. [Plaintiff] is further limited to unskilled simple repetitive one to two-step tasks, and to work that involves only superficial contact with the public. Additionally, [Plaintiff] cannot work in tandem or in a team with other fellow workers, and requires very little change in the work structure.

Tr. at 18 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." Tr. at 23 (emphasis and citation omitted). After considering Plaintiff's age (thirty-five years old when the application was filed), education ("limited education"), work experience, and RFC, the ALJ found at step five that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 23, 24 (emphasis and citations omitted). Relying on the testimony of the VE, the ALJ determined Plaintiff can perform representative jobs such as "Office Mail Clerk" and "Toll Collector." Tr. at 24. The ALJ concluded that Plaintiff "has not been under a disability . . . since September 21, 2009, the date the application was filed." Tr. at 25 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

As noted above, Plaintiff raises two arguments on appeal.  Each is addressed in turn.

## A.  Mental Limitations – Medical Opinions

Plaintiff argues that the ALJ did not properly assess and apply two medical opinions regarding Plaintiff's mental limitations.  See Pl.'s Br. at 5-13.  Specifically, Plaintiff contends that although the ALJ gave great weight to the opinions of Steven Abraham, Psy.D., an examining physician, and Catherine Nunez, Ph.D., a state agency consultant, the ALJ failed to account for all of the mental limitations assessed by those physicians in his RFC.  See id.

On May 17, 2010, Dr. Abraham examined Plaintiff and authored a detailed report. See Tr. at 432-35.  Dr. Abraham noted that during his examination, Plaintiff "was not oriented to date, time, city or county[, . . . and he] had problems with his posture in regard to rocking during the interview."  Tr. at 434.  He stated that Plaintiff's current Global Assessment of Functioning ("GAF") score was 50, and his current prognosis was "guarded."  Tr. at 434.  He opined that Plaintiff "appear[ed] to be suffering from depression, anxiety, and attention deficit hyperactivity disorder, predominantly inattentive type."  Tr. at 435.  Dr. Abraham stated that "[t]he combined symptoms based on [Plaintiff's] report and [his (Dr. Abraham's)] clinical observations appear to be severely impacting activities of daily living, vocational performance, and interpersonal interactions."  Tr. at 435.

On June 25, 2010, Dr. Nunez, a state agency consultant, completed a Psychiatric Review Technique, Tr. at 441-54, and a Mental RFC Assessment, Tr. at 455-58.  She opined that Plaintiff would have moderate limitations in the following areas: "Restriction of Activities of Daily Living"; "Difficulties in Maintaining Social Functioning"; and "Difficulties in Maintaining Concentration, Persistence, or Pace."  Tr. at 451.  She noted that Plaintiff had not had any "Episodes of Decompensation, Each of Extended Duration."  Tr. at 451.  On a more detailed

portion of the Mental RFC Assessment form, Dr. Nunez opined that Plaintiff would have moderate limitations in his abilities to "understand and remember detailed instructions"; "carry out detailed instructions"; "maintain attention and concentration for extended periods"; "accept instructions and respond appropriately to criticism from supervisors"; and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  Tr. at 455-56.

Dr. Nunez provided the following summary:

[Plaintiff] has deficits in concentration and memory skills.  He is also not oriented to time and date.  However, his thinking skills are generally intact and logical.  There is no evidence of p[sy]chosis.  It is believed that his difficulties functioning are related to his untreated ADHD and depression.  When given supervision, he is capable of completing tasks and following instructions.  He is highly (pathologically) dependent on his mother who cares for him as a minor child.  Based on longitudinal [history] and current [mental status examination], he would be able to complete simple routine tasks in a work-like setting but due to dependency issues, would need close supervision at least initially.

Tr. at 453.  Dr. Nunez further opined that Plaintiff "can follow instructions if they are simple and low in detail," and he "can accept directions and feedback and will function best at tasks with modest social demands."  Tr. at 457.  She also determined that Plaintiff "can persist at tasks for 6-8 hours in an eight hour period, at an appropriate pace, and sustain this level across days and weeks."  Tr. at 457.

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the

---

[4]        "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

An examining physician's opinion is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

In his Decision, the ALJ summarized the opinions of Dr. Abraham and Dr. Nunez. See Tr. at 21-22. As to Dr. Abraham, the ALJ noted that "[t]o the extent the doctor provided an opinion related to [Plaintiff's] mental functioning, it was the [GAF] score, [that] suggests a borderline rating between severe and moderate functional limitations with occupational activities." Tr. at 22. The ALJ assigned Dr. Abraham's opinion "great weight." Tr. at 22. He then stated, "Although Dr. Abraham slightly overstated [Plaintiff's] limitation[s], as a straight finding of moderate occupational limitations from a mental standpoint is more consistent with the longitudinal evidence of record, the doctor's opinions are generally consistent with the evidence of record." Tr. at 22. The ALJ noted that Dr. Abraham "is an expert in his field, and he based his opinions on a personal examination of [Plaintiff]." Tr. at 22. The ALJ also assigned "great weight" to Dr. Nunez's opinions, noting that her opinions "are consistent with the objective medical findings, other opinions of record, and [that she] is well qualified to

formulate opinions related to the functionality of an individual for the purpose of disability claims."  Tr. at 22.

Upon review, the undersigned finds that the ALJ erred in his assessment and application of these medical opinions.  Despite assigning Dr. Abraham's opinions "great weight," the ALJ determined, without adequate explanation, that Plaintiff's restrictions were more appropriately categorized as "moderate" rather than as "severe."  Tr. at 22.  The ALJ's only stated reason was that a moderate finding "is more consistent with the longitudinal evidence of record."  Tr. at 22.  Yet, in what appears to be a contradiction, the ALJ also recognized that Dr. Abraham's "opinions are generally consistent with the evidence of record."  Tr. at 22.  The ALJ's Decision does not reflect what "longitudinal evidence" in the record he relies on to implicitly discredit Dr. Abraham's findings, and his failure to adequately explain his reasoning for discrediting Dr. Abraham's opinions frustrates judicial review.  As to Dr. Nunez, while the ALJ assigned "great weight" to her opinions, Tr. at 22, he failed to include all the assessed limitations in the RFC.  For example, the ALJ did not include any limitations relating to Dr. Nunez's opinions that Plaintiff would "would need close supervision at least initially," Tr. at 453, or that he would only be able to "persist at tasks for 6-8 hours in an eight hour period," Tr. at 457.

The evidence relating to Plaintiff's mental limitations includes the medical opinions of Dr. Abraham and Dr. Nunez; the testimony of Plaintiff and his mother; and some third-party function reports completed by Plaintiff's family members.  The ALJ discredited Plaintiff's testimony to the extent it was inconsistent with the RFC, and he assigned "little weight" to the testimony of Plaintiff's mother and the third-party function reports.  Tr. at 20.  As noted,

the only other medical evidence in the administrative transcript regarding Plaintiff's mental limitations are the opinions of Dr. Abraham and Dr. Nunez, to which the ALJ stated he was assigning "great weight," but he actually did not do so.  Without an explanation from the ALJ as to why he rejected certain portions of the opinions of Drs. Abraham and Nunez, even though he assigned those opinions "great weight," the undersigned cannot find the Decision to be supported by substantial evidence.

### B.  Physical Limitations – Medical Evidence / Testimony

With respect to his physical limitations, Plaintiff asserts that he "lacked the physical capacity to perform the standing, walking, and sitting requirements of the ALJ's" RFC, Pl.'s Br. at 14, and he points to various medical evidence and his testimony at the hearing in support of his contention, see id. at 14-16.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1545(a)(5).  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

The ALJ's RFC assessment as detailed above contains several restrictions relating to Plaintiff's physical limitations.  See Tr. at 18.  It is not entirely clear, however, how the ALJ determined the physical limitations in the RFC.  The ALJ summarized the objective medical evidence and the treatment notes in the administrative transcript, Tr. at 20, and the only medical opinion the ALJ cited regarding Plaintiff's physical limitations is that of a state agency consultant, Robert Steele, M.D.  Tr. at 22-23.  The ALJ assigned Dr. Steele's opinion "limited weight," noting that "it overstates [Plaintiff's] physical limitations, and is not consistent with other evidence of record, such as [Plaintiff's] testimony regarding swimming and his own assertion through testimony that he could lift fifteen pounds, which exceeds [Dr. Steele's RFC]."  Tr. at 23.  The ALJ also stated that "[b]ecause Dr. Steele's opinions are not consistent with the longitudinal evidence of record, they are less persuasive."  Tr. at 23.

The ALJ failed to explain how Plaintiff's testimony that he "swim[s the length of the pool] a couple days a week," Tr. at 69, contradicts Dr. Steele's opinion.  See Tr. at 23.  As to the ALJ's statement that Dr. Steele's opinion is inconsistent with Plaintiff's testimony that he can lift fifteen pounds, a review of Plaintiff's testimony does not reveal such a clear answer.  Plaintiff's representative at the hearing asked him, "About how much weight do you think you can tolerate lifting before it starts to become problematic?"  Tr. at 56.  Plaintiff responded, "I don't know, [5], 10 pounds, 10 pounds, 15 pounds. . . . I don't weigh it when I lift it so I don't really know."  Tr. at 56.  Moreover, the ALJ merely concluded, without explanation, that Dr. Steele's opinions "are not consistent with the longitudinal evidence of record."  Tr. at 23.  The ALJ, however, did not address or point to the "longitudinal evidence" to which he referring.  Because the ALJ failed to explain his rationale, the undersigned

cannot review the ALJ's findings relating to Plaintiff's physical limitations to determine whether the RFC assessment is supported by substantial evidence.

### V.  Conclusion

After due consideration, it is

**ORDERED:**

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)     Reevaluate the medical opinions of record, especially the opinions of Drs. Abraham, Nunez, and Steele, and state with particularity the weight assigned to them and the reasons therefor;
>
> (B)     Reevaluate Plaintiff's RFC assessment; and
>
> (C)     Take such other action as may be necessary to resolve this claim properly.

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b)/§ 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 19, 2015.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

-13-

jlk
Copies to:
Counsel of Record